# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

|  |  |  |
|---|---|---|
| CRYSTAL MULHERIN, | ) | |
| | ) | |
| | ) | Case No. |
| *Plaintiff*, | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| CITY OF FLINT, JOSEPH KENNEDY, and | ) | |
| UNKNOWN OFFICERS. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| *Defendants*. | ) | |
| | ) | |
| | ) | |

## COMPLAINT

NOW COMES Plaintiff, CRYSTAL MULHERIN, by her attorneys LOEVY & LOEVY, and complaining of Defendants the CITY OF FLINT, JOSEPH KENNEDY, and UNKNOWN OFFICERS, states as follows:

## INTRODUCTION

1.     Plaintiff Crystal Mulherin was thirty years old when she was wrongfully targeted and convicted for the 2021 shooting of Thadeus Seldon.

2.     Plaintiff was arrested and tried solely because Defendants conspired among themselves to coerce inculpatory statements, fabricated evidence connecting Mulherin to the shooting, and withheld material exculpatory evidence.

3.     Mulherin had nothing to do with the shooting. Not one piece of physical evidence connected her to the shooting, and the State has since determined she did not commit the crime.

4.     Defendants' misconduct caused Mulherin to be sentenced to a minimum of 15 years in prison.

5.      While Mulherin's case was on appeal, DNA testing of evidence Defendants collected from the crime scene proved that Mulherin was innocent.

6.      On January 11, 2024, several years after the shooting, a joint motion filed by the Conviction Integrity Unit of the Genesee County Prosecutor's Office and Mulherin's appellate lawyers requested that her convictions be vacated.

7.      Less than two weeks later, the court vacated Mulherin's convictions, and the charges were dismissed.

8.      Mulherin now brings this case seeking justice and redress for the devastating injuries Defendants caused her.

## PARTIES

9.      Plaintiff Crystal Mulherin is an individual living in Clio, Michigan who spent time incarcerated for a crime she did not commit.

10.     Defendant City of Flint is a municipality and was or is the employer of each individual defendant. The City of Flint is liable for the individual Defendants' misconduct while acting within the scope of their employment for the City.

11.     Defendant Joseph Kennedy and other unknown law enforcement officers were Flint Police Department ("FPD") officers acting under color of law at all relevant times. Plaintiff sues these defendants in their individual capacities only.

12.     Defendant unknown law enforcement officers of the FPD supervised Defendant Officers. They facilitated, condoned, and approved the constitutional violations committed by Defendant Officers.

13.     Every individual Defendant, known and unknown, acted under color of law and within the scope of his or her employment at all times relevant to this lawsuit. Each of the individual Defendants is sued in his or her individual capacity unless otherwise noted.

## JURISDICTION AND VENUE

14.     This action is brought pursuant to 42 U.S.C. § 1983 and Michigan law to redress the Defendants' tortious conduct and their deprivation of Plaintiff's rights secured by the U.S. Constitution.

15.     This Court has subject-matter jurisdiction over Plaintiff's 42 U.S.C. § 1983 claims under 28 U.S.C § 1331.

16.     The court has subject-matter jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367.

17.     Venue is appropriate in this district and division because the events giving rise to all of Plaintiff's claims occurred in the City of Flint. 28 U.S.C. § 1391(b).

## ALLEGATIONS

### The Crime

18.     In the evening of September 13, 2021, someone shot Thadeus Seldon in the parking lot of a party store in Flint, Michigan.

19.     A surveillance camera from a nearby home captured the shooting.

20.     The footage showed a person wearing a black hoodie and a black mask pedal up on a bicycle, get off, and lean the bicycle against a utility pole.

21.     The person then took a drag from a cigarette and tossed it into some nearby grass.

22.     The person then fired several shots at Seldon, striking him in his chest.

**Crystal Mulherin**

23.    In September 2021, Crystal Mulherin had no criminal record and was living in Flint.

24.    Mulherin had nothing to do with the Seldon shooting. She is completely innocent of the crime.

25.    At the time, Mulherin was in a vulnerable position in her life.

26.    She ended up incarcerated in the Genesee County Jail on unrelated charges shortly after Seldon was shot.

**Investigation**

27.    FPD responded to the shooting.

28.    At the scene, Seldon, who was suffering from a gunshot wound, told an FPD officer that "the dude" who shot him had run away.

29.    Mulherin is a female, not a "dude."

30.    From the scene, FPD recovered five .40 caliber shell casings, as well as a cigarette butt in the grass that was half-smoked and still burning when the officers arrived. DNA swabs were taken from the bicycle's handlebars.

31.    Joseph Kennedy was assigned as lead investigator on the case.

32.    Defendant unknown supervising officers, as the supervisors of the investigation into the Seldon shooting, were responsible for overseeing the investigation.

33.    Defendant unknown supervising officers were responsible for ensuring that investigative information was documented and reported and eventually transmitted to state criminal defense attorneys.

34.    Moreover, Defendant unknown supervising officers were responsible for ensuring that the Seldon burglary was conducted pursuant to the policies and customs of FPD.

35.     At all times during the investigation, Defendant unknown supervising officers kept themselves appraised of all evidence collected in the case.

36.     Detective Kennedy set his sights on Mulherin early on, regardless of actual guilt or innocence.

37.     He interrogated Mulherin and audio-recorded the interview. When he conducted this interview, Kennedy had no intention of accurately identifying the perpetrator.

38.     Kennedy capitalized on a recent fight between Seldon and Mulherin to coerce Mulherin to make what Defendants considered to be inculpatory statements in relation to the Seldon shooting.

39.     Two days prior to the shooting, Mulherin and Seldon had gotten into a fight in the parking lot of a gas station across the street from the party store where the shooting occurred.

40.     A video of their confrontation, which had been posted online, showed Mulherin take a swing at Seldon. In response, Seldon grabbed Mulherin and threw her across the parking lot.

41.     During the interrogation, Kennedy returned to that fight over and over to coerce Mulherin into making what he considered to be inculpatory statements. In the process Mulherin stated at least 20 times that she did not shoot Seldon.

42.     In an effort to implicate Mulherin notwithstanding her innocence, Kennedy persisted.

43.     Deep into the interrogation, Mulherin gave some answers Kennedy construed to be inculpatory.

44.     Mulherin attempted to clarify her answers, repeatedly asserting her innocence. But as far as Kennedy was concerned, he had secured Mulherin's false confession.

45.     Kennedy then went to see Seldon, who was still hospitalized. According to Kennedy, Seldon identified Mulherin. That is so even though he had not seen the perpetrator's face or hair because they were wearing a ski mask, he had not exchanged words with the perpetrator, and immediately after Seldon was shot, he passed out.

46.     During the investigation a woman named April Thornton, who was incarcerated at Genesee County Jail with Mulherin, saw an opportunity and asked to speak with Kennedy.

47.     Thornton told Kennedy that Mulherin, out of the blue, told Thornton that she shot at Seldon five times, hitting him once in the shoulder—he was struck in the chest.

48.     At the time, Thornton told Kennedy she could not remember the type of gun Mulherin had used. But after Thornton spoke with Mulherin again, Mulherin supposedly revealed to Thornton that she shot him with a Baretta 22 or an AR—Seldon wasn't shot with either.

49.     Thornton also told Kennedy where he could find the gun that was used. That information was false, and a gun was never recovered.

50.     In fact, none of Thornton's supposed leads ever panned out.

51.     Thornton did not like Mulherin. She believed Mulherin had robbed her father. Mulherin and Thornton were not cellmates, either. As Thornton told it, Mulherin just came over to Thornton's cell two days after the shooting and confessed to the crime without any prompting.

52.     Many months later, Kennedy received DNA testing from the lit cigarette found at the scene. It did not match Mulherin.

53.     He did not order DNA testing from the bicycle handlebars—although he could have—to compare to the cigarette. And he did not take any further steps to investigate because he knew further testing would destroy the false case he had built against Mulherin.

**Mulherin's Wrongful Arrest, Conviction, and Imprisonment**

54.     Based on the supposedly inculpatory statements Kennedy coerced from Mulherin, Seldon's wrongful identification, and the jailhouse informant's false information, Mulherin was charged with assault with intent to murder.

55.     She was taken into custody on September 17, 2021.

56.     Kennedy and Defendant unknown supervisory officers knew there was no probable cause to suspect Mulherin for the shooting. No physical evidence connected Mulherin to the crime scene. In fact, the DNA from the cigarette butt was not Mulherin's. And Defendants deliberately declined to test the physical evidence that would ultimately exonerate Mulherin: The DNA swabs from the bicycle handlebar. Indeed, the only evidence tying Mulherin to the crime was procured through manipulation and obviously flawed.

57.     As a result of Defendants' misconduct, Mulherin was tried in the Circuit Court of Genesee County in July 2022 in a jury trial.

58.     The State's case hinged upon the "false confession" resulting from Kennedy's improper and coercive interrogation of Mulherin, Seldon's testimony that he could tell the person in "all black" was Mulherin even without seeing a face, and the testimony of Thornton, a jailhouse informant who hoped that implicating Mulherin would help her get out of jail.  There was no other evidence, physical or otherwise, linking Mulherin to the crime.

59.     Kennedy testified that he developed Mulherin as a suspect early on and interrogated her just days after the shooting, resulting in the allegedly incriminating statements.

60.     Kennedy never developed any other suspect and admitted that he did not do much with the physical evidence gathered at the crime scene, claiming the crime lab was backed up.

61.     An FPD lab director testified that the cigarette butt was submitted for DNA testing. The profile came from an unknown male and excluded Mulherin as a contributor. The DNA swabs taken from handlebars were never processed—a decision left up to the Defendants.

62.     A jury found Mulherin guilty of assault with intent to murder. The judge sentenced her to a minimum of 15 years in prison.

### Mulherin's Exoneration

63.     While Mulherin's case was on appeal, lawyers at the Michigan State Appellate Defender Office and prosecutors in the Genesee County Prosecutor's office, after conducting a routine conviction integrity review of the case, sought DNA testing of the bicycle handlebars.

64.     The testing determined that the DNA recovered from the bicycle matched the DNA from the still-hot cigarette butt found at the scene. In fact, the DNA was a match to a person known to the prosecutor's office.

65.     The prosecutor's office and Mulherin's appellate attorneys filed a joint motion for a new trial on January 11, 2024, agreeing that the newly tested evidence proved that Mulherin did not shoot Seldon.

66.     Less than two weeks later, Mulherin's convictions were vacated, and the charges were dismissed.

### Mulherin's Injuries

67.     Mulherin's arrest without cause for attempted murder flipped her life upside down.

68.     All told, Mulherin spent approximately three years in prison—longer than she would have absent her wrongful conviction for the Seldon shooting.

69.     During her wrongful imprisonment, Mulherin was unfairly deprived of the ability to interact with her family and friends; be present for birthdays, holidays, and other life events; pursue her passions and interests; and live as an autonomous person.

70.     Instead, Mulherin was branded an attempted murderer and imprisoned in harsh, dangerous, and isolating conditions in Michigan prison. Each day she was locked in prison, she faced physical violence, and emotional abuse.

71.     In addition, Mulherin must now struggle to build an existence outside of prison and attempt to rebuild the relationships that atrophied during years of neglect.

72.     This time was emotionally, physically and psychologically dehumanizing and debilitating, and Plaintiff has suffered from fear, anxiety, depression, despair, boredom, and loneliness.

**COUNT I**
**42 U.S.C. § 1983 – False Confession**
**Against Joseph Kennedy**

73.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

74.     In the manner described above, Defendant Kennedy, acting under color of law and within the scope of his employment, conducted an unconstitutional interrogation of Plaintiff, and coerced her into making involuntary statements against her will, which incriminated her and which were used against her to her detriment in her criminal proceedings, in violation of Plaintiff's rights secured by the Fifth and Fourteenth Amendments.

75.     In addition or alternatively, as described above, Defendant Kennedy, acting under color of law and within the scope of his employment, fabricated a false confession, which was attributed to Plaintiff and used against her in her criminal proceedings, in violation of Plaintiff's right to a fair trial protected by the Fourteenth Amendment.

76. Defendant Kennedy's misconduct described in this count was objectively unreasonable and was undertaken intentionally and with willful indifference to Plaintiff's constitutional rights and her innocence.

77. As a result of Kennedy's misconduct described in this count, Plaintiff lost her liberty and sustained and continues to sustain injuries, including physical injury, emotional pain and suffering, great mental anguish, humiliation, degradation, and other grievous and continuing injuries and damages as set forth above.

78. Defendant Kennedy's misconduct described in this count was undertaken pursuant to the policies and practices of the City of Waukegan, which are more fully described below.

## COUNT II
### 42 U.S.C. § 1983 – Violation of Due Process
### Against Joseph Kennedy and Unknown Police Officers

79. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

80. As described above, Defendant Kennedy, while acting individually, jointly, and in conspiracy with unknown police officer Defendants, and under color of law and within the scope of his employment, deprived Plaintiff of her constitutional right to due process and her right to a fair trial.

81. As described more fully above, Defendant Kennedy and unknown police officers concealed exculpatory information, fabricated evidence, and destroyed additional evidence, including but not limited to the circumstances surrounding Seldon and the jailhouse informant's identifications, thereby misleading and misdirecting the criminal prosecution of Plaintiff.

82. In addition, based on information and belief, the Police Officer Defendants concealed, fabricated, and destroyed additional evidence that is not yet known to Plaintiff.

83.     The Defendants obtained Plaintiff's conviction based only on this false evidence, and they failed to correct fabricated evidence that they knew to be false when it was used against Plaintiff during her criminal case.

84.     Defendants' misconduct directly resulted in Plaintiff's unjust and wrongful criminal prosecution, her conviction, and the deprivation of her liberty, thereby violating her right to due process and a fair trial guaranteed by the Fourteenth Amendment of the United States Constitution. Absent this misconduct, Plaintiff's prosecution would not and could not have been pursued, and Plaintiff would not have been convicted.

85.     Defendants' misconduct described in this count was objectively unreasonable and was undertaken intentionally and with willful indifference to Plaintiff's constitutional rights and her innocence.

86.     As a result of Defendants' misconduct described in this count, Plaintiff lost her liberty and sustained and continues to sustain injuries, including physical injury, emotional pain and suffering, great mental anguish, humiliation, degradation, and other grievous and continuing injuries and damages as set forth above.

87.     Defendants' misconduct described in this count was undertaken pursuant to the policies and practices of the City of Waukegan, which are more fully described below.

**COUNT III**
**42 U.S.C. § 1983 – Malicious Prosecution**
**Against Joseph Kennedy and Unknown Police Officers**

88.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

89.     In the manner described above, Defendant Kennedy, individually, jointly, and in conspiracy with unknown police officer Defendants, as well as under color of law and within the scope of his employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for

doing so and in spite of the fact that he knew Plaintiff was innocent, in violation of her rights secured by the Fourth and Fourteenth Amendments.

90.     In so doing, Defendants maliciously prosecuted Plaintiff and caused Plaintiff to be deprived of her liberty without probable cause and to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

91.     Defendants' misconduct described in this count was objectively unreasonable and was undertaken intentionally and with willful indifference to Plaintiff's constitutional rights and her innocence.

92.     As a result of Defendants' misconduct described in this count, Plaintiff lost her liberty and sustained and continues to sustain injuries, including physical injury, emotional pain and suffering, great mental anguish, humiliation, degradation, and other grievous and continuing injuries and damages as set forth above.

93.     Defendants' misconduct described in this count was undertaken pursuant to the policies and practices of the City of Waukegan, which are more fully described below.

### COUNT IV
### 42 U.S.C. § 1983 – Failure to Intervene
### Against Joseph Kennedy and Unknown Police Officers

94.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

95.     In the manner described above, during the constitutional violations described herein, one or more unknown police officer Defendant stood by without intervening to prevent the violation of Plaintiff's constitutional rights.

96.     These Defendants had ample, reasonable opportunities as well as the duty to prevent this harm but failed to do so.

97.     Defendants' misconduct described in this count was objectively unreasonable and was undertaken intentionally and with willful indifference to Plaintiff's constitutional rights and her innocence.

98.     As a result of Defendants' misconduct described in this count, Plaintiff lost her liberty and sustained and continues to sustain injuries, including physical injury, emotional pain and suffering, great mental anguish, humiliation, degradation, and other grievous and continuing injuries and damages as set forth above.

**COUNT V**
**42 U.S.C. § 1983 – Conspiracy to Violate Constitutional Rights**
**Against Joseph Kennedy and Unknown Police Officers**

99.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

100.    In the manner described more fully above, the police officer Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to fabricate evidence and to detain, prosecute, and convict Plaintiff for the Seldon shooting, regardless of Plaintiff's guilt or innocence, and thereby to deprive her of her constitutional rights.

101.    In so doing, these co-conspirators agreed to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

102.    In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

103.    Defendants' misconduct described in this count was objectively unreasonable and was undertaken intentionally and with willful indifference to Plaintiff's constitutional rights and her innocence.

104.     As a result of Defendants' misconduct described in this count, Plaintiff lost her liberty and sustained and continues to sustain injuries, including physical injury, emotional pain and suffering, great mental anguish, humiliation, degradation, and other grievous and continuing injuries and damages as set forth above.

## COUNT VI
### 42 U.S.C. § 1983 – Policy & Custom Claims
### Against the City of Flint

105.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

106.     The City of Flint employed Defendant Kennedy and other unknown FPD police officers, supervised them, and promulgated polices, including written polices and unwritten customs, that caused the wrongful conviction of Plaintiff.

107.     The constitutional violations—as set forth in Counts I and II and incorporated by reference here—that caused Plaintiff's wrongful arrest, prosecution, and conviction were the result of the City of Flint's policies, practices, and customs, as well as by the actions of policy-making officials for the City of Flint.

108.     At all times relevant to the events described in this complaint and for a period of time before and after, the City of Flint either had inadequate rules, regulations, policies, and procedural safeguards, or failed to promulgate adequate rules, regulations, policies, and procedural safeguards governing: (1) The conduct of interrogations and questioning of criminal suspects and witnesses; (2) the collection, documentation, preservation, testing, and disclosure of evidence, including physical evidence, material exculpatory evidence, and impeachment evidence; (3) obtaining statements and testimony from suspects and witnesses, including jailhouse informants; (4) writing police reports and taking investigative notes (5) maintaining

14

investigative files and disclosing those files in criminal proceedings; and (6) intervention to prevent and redress misconduct by other officers.

109.    In addition or alternatively, the City of Flint failed to train and supervise police officers and agents of the Flint Police Department with respect to: (1) The conduct of interrogations and questioning of criminal suspects and witnesses; (2) the collection, documentation, preservation, testing, and disclosure of evidence, including physical evidence, material exculpatory evidence, and impeachment evidence; (3) obtaining statements and testimony from suspects and witnesses, including jailhouse informants; (4) writing police reports and taking investigative notes (5) maintaining investigative files and disclosing those files in criminal proceedings; and (6) intervention to prevent and redress misconduct by other officers.

110.    Officers and agents of the City of Flint committed these failures to promulgate proper or adequate rules, regulations, policies, and procedures notwithstanding the obvious need for such rules, regulations, policies, and procedures.

111.    Had officers and agents of the City of Flint promulgated appropriate policies and/or implemented adequate training and supervision, then the violation of Plaintiff's constitutional rights would have been prevented.

112.    The constitutional harms caused by the inadequate policies, practices, and customs of the City of Flint are not limited to Plaintiff's wrongful conviction. In 2009, for example, Dartanion Edwards was wrongfully convicted of a murder stemming from a shooting in which a single witness identified Edwards as a shooter. Years later, the defendants discovered a withheld transcript of the police interview with the witness revealing flaws and inconsistencies in the witness's account. And in 2010, Kino Christian, Joshun Edwards, and C'Quan Hinton were wrongfully convicted of murder based on a problematic witness's identification of them through

photographic lineups. A jailhouse informant also testified that Christian confessed to the murder while they were locked up together. In exchange for his testimony, the informant was promised that his probation would be transferred to another state.

113.    This misconduct—relating to problematic witness identifications and jailhouse informant testimony—is similar in kind to that alleged against the Defendant police officers here, during their investigation into the Seldon shooting and the arrest and prosecution of Plaintiff.

114.    In short, given the foregoing, at all times relevant to the events described in this complaint and for a period of time before, the City of Flint had notice of a practice and custom by officers and agents of the FPD that included one or more of the following: (1) officers manipulated statements and testimony of witnesses and criminal defendants to implicate criminal defendants in criminal conduct; (2) officers failed to properly document and disclose their interactions with witnesses and jailhouse informants; (3) officers did not record investigative information in police reports, did not maintain proper investigative files, and/or did not disclose investigative materials to criminal defendants; (4) officers failed to maintain and/or preserve evidence and/or destroyed evidence; and/or (5) officers pursued and secured wrongful convictions through profoundly flawed investigations.

115.    These practices and customs, individually and/or together, were allowed to flourish because the leaders, supervisors, and policymakers of the City of Flint directly encouraged them and were thereby the moving force behind the very type of misconduct at issue by failing to adequately train, supervise, and control their officers, agents, and employees; by failing to adequately punish and discipline prior instances of similar misconduct; and by maintaining a code of silence pursuant to which officers were encouraged not to rat one another out, thus directly encouraging future abuses like those affecting Plaintiff.

116.    The above practices and customs, so well settled as to constitute de facto policies of the City of Flint, were able to exist and thrive, individually and/or together, because policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

117.    Defendant City of Flint was aware of the need for adequate polices, training, and supervision, was deliberately indifference to the need, and made a deliberate choice not to adopt adequate policies, training, or supervision; this choice was an official policy.

118.    As a result of Defendant Kennedy and unknown police officers' misconduct while they were acting pursuant to one or more of the policies, practices, and customs set forth above, Plaintiff lost her liberty and sustained and continues to sustain injuries, including physical injury, emotional pain and suffering, great mental anguish, humiliation, degradation, and other grievous and continuing injuries and damages as set forth above.

**COUNT VII**
**State Law Claim – Malicious Prosecution**
**Against Joseph Kennedy and Unknown Police Officers**

119.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

120.    In the manner described above, Joseph Kennedy, individually, jointly, and in conspiracy with unknown police officer Defendants, as well as within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate and to continue and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so.

121.    In so doing, the Defendants caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

122.    The judicial proceedings were terminated in Plaintiff's favor and in a manner indicative of her innocence when her conviction was vacated and charges against her were dropped in January 2024.

123.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and in total disregard of the truth and Plaintiff's clear innocence.

124.    As a result of Defendants' misconduct described in this count, Plaintiff lost her liberty and sustained and continues to sustain injuries, including physical injury, emotional pain and suffering, great mental anguish, humiliation, degradation, and other grievous and continuing injuries and damages as set forth above.

## COUNT VIII
### State Law Claim – Intentional Infliction of Emotional Distress
### Against Joseph Kennedy and Unknown Police Officers

125.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

126.    The actions, omissions, and conduct of the police officer Defendants as set forth above were extreme and outrageous. These actions were rooted in an abuse of power and authority and were undertaken with the intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

127.    As a result of Defendants' misconduct described in this count, Plaintiff lost her liberty and sustained and continues to sustain injuries, including physical injury, emotional pain and suffering, great mental anguish, humiliation, degradation, and other grievous and continuing injuries and damages as set forth above.

**COUNT IX**
**State Law Claim – Civil Conspiracy**
**Against Joseph Kennedy and Unknown Police Officers**

128.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

129.    As described more fully in the preceding paragraphs, the police officer Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime she did not commit and conspired by concerted action to accomplish an unlawful purpose and/or to achieve a lawful purpose by unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

130.    In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

131.    The violations of Michigan law described in this complaint, including Defendants' malicious prosecution of Plaintiff and their intentional infliction of emotional distress, were accomplished by Defendants' conspiracy.

132.    The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

133.    As a result of Defendants' misconduct described in this count, Plaintiff lost her liberty and sustained and continues to sustain injuries, including physical injury, emotional pain and suffering, great mental anguish, humiliation, degradation, and other grievous and continuing injuries and damages as set forth above.

**COUNT X**
**State Law Claim – *Respondeat Superior***
**Against the City of Flint**

134.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

135.     While committing the misconduct alleged in the preceding paragraphs, the
Defendants were employees, members, and agents of the City of Flint, acting at all relevant times
within the scope of their employment.

136.     Defendant City of Flint is liable as principal for all torts committed by its agents.

**COUNT XI**
**State Law Claim – Indemnification**
**Against the City of Flint**

137.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

138.     At all relevant times, the Defendants were employees, members, and agents of
Defendant City of Flint who acted within the scope of their employment in committing the
actions described in this complaint.

139.     Defendant City of Flint is responsible to pay Plaintiff under any applicable
contractual or statutory obligation that directs it to pay a tort judgment for compensatory
damages for which its employees are liable arising from acts performed in the scope of their
employment.

WHEREFORE, Plaintiff CRYSTAL MULHERIN respectfully requests that this Court
enter a judgment in her favor and against Defendants KENNEDY, UNKNOWN OFFICERS, and
CITY OF FLINT, awarding compensatory damages, attorneys' fees, and costs against each
Defendant, punitive damages against each of the Individual Defendants, and any other relief that
this Court deems just and appropriate.

**JURY DEMAND**

Plaintiff, CRYSTAL MULHERIN, hereby demands a trial by jury pursuant to Federal
Ruel of Civil Procedure 38(b) on all issues so triable.

20

Respectfully submitted,
**CRYSTAL MULHERIN**

/s/ Rosalind Dillon
*One of Plaintiff's Attorneys*

Thomas Hanson (MI Bar ID P26275)*
Jonathan Loevy
Rosalind Dillon
Loevy & Loevy
311 N. Aberdeen St., Third Floor
(312) 243-5900
dillon@loevy.com

*Counsel of Record*